**Filomena PRISCO, Individually and as Administratrix of the Goods, Chattels and Credits of Thomas Prisco, Deceased, Plaintiff, Counter–Defendant, Appellant,**

v.

**A & D CARTING CORP., John Danna & Sons, Inc., Gunhill Trucking Ltd., Suburban Carting Corp., and NYCONN Waste Disposal, Defendants, Cross–Defendants, Cross–Claimants, Appellees,**

**Angelo Anthony Calvello, A–1 Carting, Inc., LSC Trucking Corp., Decostole Carting, Kristal Papers Ltd., Karnak Inc., and Best Container Service, Inc., Defendants,**

A.F.C. Carting Inc., State of New York, New York State Department of Environmental Conservation, Thomas C. Jorling, as Commissioner of the New York State Department of Environmental Conservation, New York Organized Crime Task Force, Ronald Goldstock, Esq., as Director of New York Organized Crime Task Force, John M. Murray, as employee of Div. of Law Enforcement, Bureau of Environmental Conservation Investigation, William E. Bubenicek, as employee of Div. of Law Enforcement, Bureau of Environmental Conservation Investigation, New York State Department of Environmental Conservation, New York State Police, Thomas A. Constantine, as Superintendent of New York State Police, Lloyd F. Ward, as an employee of the New York State Police, James Labate, A–1 Compaction Corp., A.F.C. Transfer Inc., also known as A.F.C. Transfer Corp., A & M Bros., Inc., American Disposal Services, Inc., Tri–State Trucking Corp., and other, if any, waste depositors who entered plaintiffs' property whose names are presently unknown, Stamford Wrecking Co., Morena Bulk Haulage, APF Carting, Vincent Cavaliere, and Tri–County Disposal, Inc., Defendants, Cross–Defendants, Appellees,

A–1 Compaction, Inc. and Greene Refuse Service, Defendants, Cross–Claimants, Cross–Defendants, Appellees.

No. 97–9405.

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1998.

Decided Feb. 17, 1999.

Michael V. Sclafani, Reardon & Sclafani, P.C., Yonkers, New York (Walter T. Reardon, of counsel), for Plaintiff, Counter–Defendant, Appellant.

Donna E. Frosco, Keane & Beane, P.C., White Plains, New York (Joel H. Sachs, of counsel), for Defendant–Appellee Stamford Wrecking Company.

Robert Fardella, Smithtown, New York, for Defendant–Appellee Gun Hill Trucking Ltd.

Jeffrey I. Klein, White Plains, New York, for Defendant–Appellee A & D Carting.

Wayne A. Stix, Cherico, Stix & Associates, White Plains, New York, for Defendants–Appellees Suburban Carting Corporation and NYCONN Waste Disposal.

Gerald A. Greenberger, Sheft, Golub & Kamlet, New York, New York, for Defendant–Appellee John Danna & Sons, Inc.

Kevin Barry, Sweeney & Barry, White Plains, New York, for Defendant–Appellee A–1 Compaction.

Dennis C. Vacco, Attorney General of the State of New York (John McConnell, Deputy Solicitor General of the State of New York, Michael Belohlavek, Gregory J. Nolan, Eugene Martin–Leff, Assistant Attorneys General of the State of New York, of counsel) for New York State Defendants–Appellees.

Before: PARKER and SACK, Circuit Judges, and SEAR *, District Judge.

* The Honorable Morey L. Sear, Chief Judge of the United States District Court for the Eastern District of Louisiana, sitting by designation.

SACK, Circuit Judge:

In the spring of 1987, Thomas and Filomena Prisco, husband and wife, began an attempt to increase the value of their land by leveling a portion of it using as fill waste construction and demolition materials delivered to the site by a variety of business entities. They discovered they could also make substantial sums by permitting others to dispose of waste on their property for a fee. The efforts entangled them with two New York State law enforcement officials who said that they would operate the landfill on the State's behalf. One or both of the officers may have been engaged in an undercover operation designed to obtain information about corruption in the construction and demolition industry. The landfill operation nonetheless was soon shut down by State environmental authorities. Hazardous substances have since been leaching from the Prisco property into the surrounding wetlands.

In 1991, the Priscos filed suit in the United States District Court for the Southern District of New York against a host of private and public defendants, asserting causes of action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972 *et seq.*, in addition to various state law claims. Sometime between then and trial, Thomas Prisco died. *See Prisco v. State of New York*, No. 91 Civ. 3990(RLC), 1994 WL 114818, 1994 U.S. Dist. LEXIS 3542 (S.D.N.Y. Mar. 25, 1994). Filomena Prisco continued the suit in her own behalf and as administratrix of his estate. *Id.* After a simultaneous jury trial on the state claims and bench trial on the federal statutory issues, on October 1, 1997, the district court (Carter, J.) dismissed her CERCLA and RCRA claims. She appeals from this judgment.[1]

Prisco contends that the district court, in dismissing her CERCLA claim against the various private defendants, applied the wrong legal standard when it determined that they were not responsible parties within the meaning of 42 U.S.C. § 9607(a). She argues also that the district court applied the wrong legal standard in dismissing her RCRA claim against the private defendants. Prisco asserts further that the district court erred by failing to notify her that it would revisit certain pretrial rulings in her favor on the issue of whether the private defendants were responsible parties under CERCLA and RCRA. Finally, Prisco argues that the district court erred in determining that the various state defendants were not liable for the actions of the two New York State law enforcement officials.

We disagree on all counts and therefore affirm the judgment of the trial court.

## BACKGROUND

### I. The Prisco Landfill

The locus of the events giving rise to this litigation was a twenty-two acre tract of land owned by the Priscos adjacent to Route 22 in the town of Patterson, in Putnam County, New York. The property consisted of the Priscos' summer home, a barn, a pond, a small stream, a small wetlands, and a sunken area towards the rear of the land. A small ridge separates the pond from a major wetland area known as the Great Swamp. Two thousand feet to the west is the East Branch of the Croton River, which feeds into the New York City water supply system.

Throughout the 1980's, in addition to maintaining their small home there, the Priscos employed their property in a variety of commercial pursuits. They hosted an annual flea market with adjoining parking, leased a building to a restaurant, and leased a cottage and several trailers to residential tenants. Previously, the Priscos had leased their barn for use in a furniture-stripping operation.

In 1986, the Priscos learned of pending commercial development nearby. Sensing an opportunity to sell their property at an advantage, they decided first to attempt to improve the value of the land by leveling it.

---

1. The jury ruled against Prisco on her state-law claims. She does not appeal that aspect of the judgment.

The cost of purchasing ordinary fill for that purpose, however, was prohibitive.

Fortuitously, at about this time, the Priscos were contacted by a pair of acquaintances, Bob Colandro and Walter Avasariak, about the possibility of the Priscos allowing them to dump construction and demolition material on the Priscos' land. The Priscos agreed and, sometime in the Spring of 1987, Colandro and Avasariak began operations. At the time their landfill was born, the Priscos were away on their annual winter sojourn in Florida.

Around May or June of 1987, Colandro and Avasariak ceased operations, apparently because the Priscos would not pay them to continue. But Avasariak introduced the Priscos to Stamford Wrecking Co., a building demolition and disposal company, which agreed to pay the Priscos $8 per cubic yard for the right to deposit construction and demolition material on their land. Stamford began operations immediately, dumping material on the Prisco property until the fall of 1987, when it decided the operation was uneconomic. By the time it discontinued the operation, Stamford had paid the Priscos approximately $100,000 for dumping rights.

Meanwhile, in August 1987, Lieutenant William Bubenicek, of the New York State Department of Environmental Conservation's ("DEC") Bureau of Environmental Conservation Investigation Unit, encountered the Priscos at their flea market. He later introduced the Priscos to Butch Ward, an investigator with the New York State Police, who was on medical disability leave. Bubenicek and Ward, in the course of several conversations over a period of several months, convinced the Priscos to allow their property to be used as what they were told would be a state-run construction and demolition disposal site for stone, dirt and wood. The Priscos later asked Bubenicek to memorialize their arrangement in writing. Neither he nor anyone else ever did.

In October 1987, Bubenicek and his immediate supervisor, Captain John Murray, met with the State's Organized Crime Task Force about the role of organized crime and corruption in the construction and demolition industry. Bubenicek told Murray that he had an informant, Ward, who was operating a site in Patterson, New York, and who was providing information about the people in the construction and demolition business, shipping and tipping costs, and the location of new sites. Bubenicek later testified that he had seen the Priscos' landfill operation over the summer and, knowing Ward's desire to get into that business, had told him about it and introduced him to the Priscos. Bubenicek told Murray also that he would be working with the task force's ongoing investigation of corruption in the construction and demolition industry.

The Prisco landfill, now in its third incarnation, was again operational by late October or early November 1987. Ward hired Anthony Calvello, James LaBate, and their company, AFC Transfer, to operate the landfill on a day-to-day basis. Calvello understood that Ward's role was to "oversee the whole operation." Eventually, AFC Transfer would pay approximately $40,000 to a corporation owned by Ward and $180,000 to the Priscos for the right to operate the landfill.

In early November, the Priscos were wintering as usual in Florida. They left their property in the hands of their adult son, but he had no time for a role in the landfill's operation other than to collect and deposit checks. So Thomas Prisco prevailed upon Calvello to hire one of the Priscos' tenants, John Smith, as an equipment operator, putting Smith in a position to oversee the daily operations on the Priscos' behalf.

Calvello testified that when trucks arrived at the Prisco landfill, they would stop at a gate. There, Calvello would give them a ticket, determine their identity, and direct them to deposit their loads at specific locations on the property. Calvello inspected the loads as they were delivered, as did Smith, whose job it was to stand by with a bulldozer ready to form and smooth the debris once it was dumped.

At about this time, Lawrence Gallagher, Assistant Sanitary Engineer for DEC's local region, began to receive complaints about the Prisco landfill. He and an employee of the Putnam County Health Department inspected the landfill on December 1, 1987. They

found solid waste deposited in water, a violation of New York State environmental regulations, *see* 6 N.Y.C.R.R. Part 360.8(a)(1) (repealed 1988), and noted that not all of the debris visible on the property constituted construction and demolition material. Gallagher reported the violation to his immediate superior, Richard Gardineer, who passed the information on to Paul Keller, DEC's regional director. Gallagher and Gardineer returned to the Prisco site together on December 11, 1987, again finding waste deposited in water. Five days later, Gallagher issued a letter to the Priscos at their New York address advising them of the violation and directing them to cease operations, cover the landfill, and seed the cover with grass in order to avoid fines and enforcement proceedings. Whether they received the letter is disputed.

On January 11, 1988, Director Keller sent a letter to the Priscos advising that in response to a January 7, 1988 letter from them, which they later denied they sent, he was granting an extension of twenty-four hours to clean up the site. In response to the January 11 letter, the concerned Priscos called Bubenicek, who told them not to worry, as Ward had taken care of the matter.

On February 5, 1988, Director Keller issued yet another letter, ordering the Priscos to cease operations immediately because of continuing violations. The Priscos again contacted Bubenicek, who assured them that the site had been shut down.

Upon their eventual return to New York in April 1988, the Priscos discovered that the landfill had not been leveled or covered, that materials including iron bars, other metal, wood, and even a rug were sticking up out of the ground, and that the pond had logs and other wood in it. With the assistance of Calvello, who supplied a dredging machine, and Smith, whom the Priscos hired to operate a bulldozer, the Priscos cleaned up the debris.

The Priscos did not hear from Bubenicek again until he reappeared on their property in the summer of 1989. At that time Bubenicek told the Priscos, to their surprise, that the landfill had been operated as a police sting operation.

In the fall of 1989, a wildlife pathologist with the DEC visited the Prisco landfill to investigate whether it was emitting pollutants. He saw construction debris, plastic, bits of wood, wood with paint on it, and pieces of asphalt on the ground, as well as "raw waste" such as wood and plastic in the wetlands area of the property. He also saw leachate leaking from the landfill into the wetlands area. He sampled the sediment and water of the wetlands area, drawing from solid material on the property, and, as a control, from a nearby lawn area that did not appear to be part of the dump. His samples were analyzed by both the New York State Health Department laboratory and an independent certified laboratory employed by the DEC. The Health Department tested for volatile substances, and found acetone, butanone, methyl ethyl ketone, and PCB's in the wetlands area water samples. These substances are all hazardous substances, under 40 C.F.R. § 302.4, for CERCLA purposes. The independent laboratory, which tested for a variety of other substances, also found elevated levels of calcium, cadmium, zinc, and lead.

The wildlife pathologist concluded that "the wetlands are contaminated with pollutants coming from the dump, and that some of these contaminants like the PCB's are a potential threat to the health of wildlife because of the elevated levels that are present." He also said that such substances commonly are found at construction and demolition sites.

Two years later, in 1991, the DEC hired an independent contractor to conduct a "preliminary site assessment" of the property. The assessment confirmed the presence of xylenes, toluene, ethylbenzene, and acetone in the soil, and of acetone, toluene, benzene, carbon disulfide, 1,1–dichloroethane, and ethylbenzene in the groundwater. These are all hazardous substances for CERCLA purposes under 40 C.F.R. § 302.4.

The testimony of plaintiff's expert Charles Rich, a hydrogeologist, confirmed that leachate was continuously coming from the landfill. Rich testified also that he believed that hazardous waste, in the form of methyl ethyl

ketone, acetone, PCB's, trichloroethene, and DET, were present at the Prisco landfill. He testified further that hazardous substances, in the form of vinyl chloride, methylene chloride, 1,2–dichloroethane, 1,1,1–trichloroethane, dichloroethane, the ethylbenzene class of compounds, and toluenes were present on the site.

In January 1990, the DEC sent Thomas Prisco a consent order proposing to settle the state-law violations at the landfill. The order called for the Priscos to pay a civil penalty of $805,000, $750,000 of it to be suspended contingent upon continuing compliance with the order. Prisco declined to sign it, and once more called Bubenicek. Bubenicek said that the DEC had been aware of the sting operation at the time it occurred, and that the Priscos should get a lawyer.[2]

## II. *Proceedings Below*

In the wake of these events, the Priscos filed suit against a large array of defendants, including the State of New York, the DEC, the Organized Crime Task Force, the State Police, Bubenicek, Ward, Murray, and a host of private entities.[3] In support of their demand for damages and injunctive and declaratory relief, the Priscos invoked a variety of theories of liability, including claims under CERCLA § 107, 42 U.S.C. § 9607, and RCRA § 7002, 42 U.S.C. § 6972.

Protracted litigation ensued, giving rise to a string of decisions disposing of pretrial motions. *See Prisco v. State of New York*, No. 91 Civ. 3990(RLC), 1992 WL 88165, 1992 U.S. Dist. LEXIS 5273 (S.D.N.Y. Apr. 22, 1992); *Prisco v. State of New York*, 804 F.Supp. 518 (S.D.N.Y.1992); *Prisco v. State of New York*, No. 91 Civ. 3990(RLC), 1994 WL 114818, 1994 U.S. Dist. LEXIS 3542 (S.D.N.Y. Mar. 25, 1994); *Prisco v. State of*

*New York*, 902 F.Supp. 374 (S.D.N.Y.1995) (*"Prisco III"*);[4] *Prisco v. State of New York*, 902 F.Supp. 400 (S.D.N.Y.1995); and *Prisco v. State of New York*, No. 91 Civ. 3990(RLC), 1995 WL 693251, 1995 U.S. Dist. LEXIS 1749 (S.D.N.Y. Nov. 22, 1995). Significantly, in *Prisco III*, the district court denied cross-motions for summary judgment on the CERCLA and RCRA claims but, in doing so, it purported to resolve several subsidiary or component issues in Filomena Prisco's favor. *See Prisco III*, 902 F.Supp. at 382, 385, 388, 393–95.

The case went to trial in 1996, with Prisco's state law claims tried to a jury and her CERCLA and RCRA claims simultaneously tried to the bench. At the conclusion of the trial, the jury found in favor of the defendants, while the court reserved decision as to the federal claims. *See Prisco v. State of New York*, No. 91 Civ. 3990(RLC), 1996 WL 596546, at *1, 1996 U.S. Dist. LEXIS 14944 (S.D.N.Y. Oct. 16, 1996) (*"Prisco VI"*). During the pendency of the court's decision, Prisco moved for a new trial on the state law claims. *See id.* Eventually, the court denied Prisco's motion for a new trial and also dismissed her CERCLA and RCRA claims against the defendants. *See id.* at *20. Prisco appeals the dismissal of her CERCLA claims against the private defendants and the dismissal of her RCRA claims against both the private and the state defendants.[5]

## DISCUSSION

Prisco argues that the district court applied the wrong legal standard in determining that she had failed to establish liability under either CERCLA or RCRA and that, in any event, it was error for the court, posttrial and without notice, to revisit these is-

---

**2.** Prior to this conversation, Bubenicek's role in the Prisco landfill was revealed in a series of hearings held by State Assemblyman Maurice Hinchey in 1989 and 1990.

**3.** Some of the defendants defaulted. The claims against them are not part of this appeal. Throughout this opinion, we refer to the nondefaulting defendants as the defendants.

**4.** This opinion appears to have been at least the fourth written ruling in the case. We nonetheless retain the convention of the district court

and refer to it as *Prisco III*. By the time of *Prisco III*, Thomas Prisco had passed away. Filomena Prisco carried on the litigation in her own capacity and her capacity as executor of her husband's estate.

**5.** Prisco does not appeal that portion of the court's decision that dismissed her CERCLA claim against the state defendants pursuant to *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

sues, which previously had been decided in her favor in *Prisco III*. Prisco also argues that the district court erred in dismissing the RCRA claim against the state defendants on the ground of failure to establish their vicarious liability for the actions of Bubenicek and Ward.

## I. *Whether the district court erred in dismissing Prisco's CERCLA claim*

### A. *CERCLA*

■ "CERCLA is a 'broad remedial statute,'" *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 514 (2d Cir.1996) (quoting *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1197 (2d Cir. 1992) ("*Murtha I*")), *cert. denied*, —— U.S. ——, 118 S.Ct. 2318, 141 L.Ed.2d 694 (1998), enacted to assure "that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions." *Id.* (quoting S. Rep. 848, 96th Cong., 2d Sess. 13 (1980), *reprinted in* 1 Senate Comm. On Env't and Pub. Works, Legislative History of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, at 305, 320 (1983)). "As a remedial statute, CERCLA should be construed liberally to give effect to its purposes." *Id.* (citing *Schiavone v. Pearce*, 79 F.3d 248, 253 (2d Cir.1996)).

■ CERCLA addresses in particular the costs of responding to the release or threatened release of "hazardous substances," as that term is defined by CERCLA § 101(14) (42 U.S.C. § 9601(14)). Towards that end, section 107 of the statute (42 U.S.C. § 9607) provides a private right of action for the recovery of such costs in certain circumstances. In determining liability under § 107, the quantity or concentration of the hazardous substance is not a factor. *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 720 (2d Cir.1993)("Congress planned for the 'hazardous substance' definition to include even minimal amounts of pollution."); *Murtha I*, 958 F.2d at 1200. Rath-

er, in order to make out a *prima facie* case under § 107, a plaintiff must establish five elements. *See Betkoski*, 99 F.3d at 514; *Alcan*, 990 F.2d at 719–20; *Murtha I*, 958 F.2d at 1198. The plaintiff must prove that:

*First*, the defendant falls within one of the four categories of potentially responsible parties set forth in § 107(a) (42 U.S.C. § 9607(a)). *See Betkoski*, 99 F.3d at 514. The categories include:

(1) the owner and operator of . . . a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such persons. . . .

42 U.S.C. § 9607(a).

*Second*, the facility is indeed a "facility" as defined by § 101(9) of CERCLA (42 U.S.C. § 9601(9)).[6] *See Betkoski*, 99 F.3d at 514.

*Third*, "there is a release or a threatened release of hazardous substances at the facility." *Id.; see* 42 U.S.C. § 9607(a)(4).

*Fourth*, the plaintiff incurred costs in responding to the release or threatened release ("response costs"). *See Betkoski*, 99 F.3d at 514; 42 U.S.C. § 9607(a)(4).

---

**6.** "The term 'facility' means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel." *Id.*

And *fifth,* the costs incurred conform to the National Contingency Plan.[7] *See Betkoski,* 99 F.3d at 514; 42 U.S.C. § 9607(a)(4)(A) & (B).

Once the plaintiff establishes these elements, the defendant is strictly liable for the presence of the hazardous substances unless it succeeds in invoking one of the statutory defenses set forth in § 107(b) (42 U.S.C. § 9607(b)).[8] It is not a defense that the particular hazardous substance attributable to a specific defendant is not linked to the plaintiff's response costs. *See Betkoski,* 99 F.3d at 514; *Alcan,* 990 F.2d at 721; *United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 265 (3d Cir.1992).

Although not heretofore raised in these proceedings, a serious problem meets Prisco's case at the threshold. Where a party seeking to recover response costs is itself a potentially responsible party within the meaning of § 107(a) (42 U.S.C. § 9607(a)), he or she may not bring suit for full cost recovery under § 107 as Prisco has. Such a plaintiff is limited instead to an action for contribution from other potentially responsible parties under CERCLA § 113(f)(1) (42 U.S.C. § 9613(f)(1)). *See Bedford Affiliates v. Sills,* 156 F.3d 416, 423–25 (2d Cir.1998). Prisco, being the owner at all relevant times of the Prisco landfill, has the characteristics of a potentially responsible party within the meaning of § 107(a)(2). Accordingly, although the issue appears to have gone unnoticed until now, it seems that Prisco's CERCLA claim should not have proceeded under § 107 but, if at all, only under § 113(f)(1).

This raises the question whether the dismissal of Prisco's CERCLA claim therefore should be affirmed on the grounds, not argued here or below, that it was improper from its inception, or the claim should instead be construed to be one under § 113(f)(1) although not pleaded or tried as such. The question need not be resolved, however. "The elements of an action under § 113(f)(1) are the same as those under § 107(a)." *Id.* at 427–28; *see* 42 U.S.C. § 9613(f)(1). Because we find that the district court correctly determined that Prisco failed to establish the elements of a § 107 claim, the same result necessarily would obtain even were we to construe the claim as one for contribution under § 113(f)(1).

**B.** *The Decision in* Prisco III

The bench trial from which this appeal arises was not the first occasion on which the district court addressed whether Prisco had proven the elements of a *prima facie* case under § 107. Before trial, in *Prisco III,* the court decided exactly this issue on cross-motions for summary judgment, finding that some of the elements of Prisco's claim were established. *See* 902 F.Supp. at 381–91. Specifically, the district court found in Prisco's favor as to the second ("facility"), third ("release or ... threatened release of hazardous substances"), and fourth (incurrence of costs in response to the release or threatened release) elements as a matter of law. *See id.* at 382, 385–86. The court found a triable issue of fact as to the fifth element, whether the costs incurred by Prisco were necessary. *See id.* at 387–88. As a result, it did not proceed to determine the presence or absence of a triable issue with regard to the additional requirement that the costs incurred be consistent with the National Con-

7. "The term 'national contingency plan' means the national contingency plan published under section 1321(c) of Title 33 or revised pursuant to section 9605 of [Title 42]." 42 U.S.C. § 9601(31).

8. In order to establish a statutory defense, a defendant must prove by a preponderance of the evidence that both the release or threat of release and the resulting damage were caused solely by—(1) an act of God; (2) an act of war; (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant ... if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or (4) any combination of the foregoing paragraphs. *Id.; see Betkoski,* 99 F.3d at 514.

tingency Plan, an issue it would not reach if the costs were not, in fact, "necessary." *See id.* at 387–88.

The district court then turned to the first, "potentially responsible party," element of Prisco's *prima facie* case, *id.* at 388–91, which lies at the heart of this appeal. It held that "[d]efendant waste haulers are responsible parties pursuant to [§ 107(a)(4) ]" because "[i]t is undisputed that defendants transported [construction and demolition] material to the Prisco site and disposed of the material at the site." *Id.* at 388.[9] The court also rejected defendants' argument that they could not be responsible parties because the evidence did not link the clean-up costs to any particular defendant's waste. *See id.* (citing *Alcan,* 990 F.2d at 721). The issue of whether the defendants were potentially responsible parties thus being determined, the court appeared to leave for trial only the issues of response costs, compatibility of such costs with the National Contingency Plan, and any statutory defenses that might be asserted.

## C. *The Trial and* Prisco VI

The parties proceeded to trial. On the basis of the evidence adduced there, the district court, sitting as the trier of fact on the federal claims, dismissed Prisco's CERCLA claim on the ground that she had failed to prove that any of the defendants were potentially responsible parties within the meaning of § 107(a). *Prisco VI,* 1996 WL 596546, at *9–12. This was, of course, precisely the issue on which the court had held *in her favor* in *Prisco III.*

In its decision, the district court addressed first the "transporter" category of potentially responsible parties, the only one arguably applicable to most of the private defendants. Although the court had "previously found that private defendants were responsible parties by virtue of the fact that they disposed of [construction and demolition] material at the· site ... and since haz-

ardous substances were found at the site," it now recognized that the *Prisco III* analysis lacked a step: "[I]n order to make out a *prima facie* case, a plaintiff must first have made a showing that a defendant transporter actually brought hazardous substances to the site, whether knowingly or not." *Id.* at *9. The court found that the evidence introduced by Prisco on this score consisted of the testimony of John Smith as to which companies had deposited what kind of waste, and Charles Rich, the hydrogeologist, who testified that that kind of waste could have caused the release of the "contaminants" found at the site. Rich also testified specifically that he thought that the "environmental conditions" at the site had been caused by the presence of materials some of which were similar to the materials that Smith testified had been deposited by some of the defendants. *See id.* at *10.

The district court was unpersuaded that this evidence proved that any particular defendant had transported hazardous substances to the Prisco landfill. Smith's testimony linked only four of the defendants— Stamford, APF, A–1, and A & D—to any particular types of material. And the court found Smith's testimony insufficiently credible to serve as the sole basis for affixing liability to them. *See id.*

Assuming that these parties did transport the rugs, wires, and other items attributed to them, moreover, the court found that Prisco had failed to prove that any of these items actually contained, let alone released, hazardous substances. *See id.* at *11. It rejected the argument that it was sufficient for Prisco merely to establish the possibility that material of a general type dumped by one of the defendants might contain hazardous substances. *See id.* And the court noted that most of the materials identified by Rich as potential sources for the released hazardous substances could just as likely have been deposited by a non-party such as the previous operators of the Prisco waste-disposal

---

9. The court concluded that Stamford was a potentially responsible party under § 107(a)(3) too, as it had an agreement with Prisco "which permitted Stamford to transport and dispose of *demolition debris* on the Prisco site." *Id.* (emphasis added). The court declined to consider whether Stamford was liable also as an operator of the Prisco landfill pursuant to § 107(a)(2). *See id.* at 388 n. 9.

site or the furniture-stripping operation once operated there. *See id.* at *12 n. 16.

The court even rejected the argument that it would be sufficient to prove that certain defendants transported materials that contained hazardous substances as component parts. It reasoned that even if this could be proved, it would be necessary for Prisco to prove also that such material actually broke down and released the hazardous substances into the soil and water. *See id.* at *11–12.

Finally and separately, the district court held that, although James LaBate and his company, AFC Transfer, had operated the Prisco landfill for a considerable period of time, they were not potentially responsible parties in light of Prisco's inability to prove that any hazardous substances were deposited at the landfill during their tenure. *See id.* at *12.

### D. *Analysis*

The district court's finding on the potentially responsible party issue in favor of Prisco on summary judgment but against her after trial presents both a substantive and a procedural question: Did the court correctly conclude that Prisco failed to establish that any of the defendants were potentially responsible parties? If so, was it nonetheless improper for the court to revisit this issue, which it had decided in Prisco's favor at the summary judgment stage, after trial and without warning to Prisco?

#### 1. *The Substantive Issue*
##### a. *Transporter Liability*

Prisco contends that the district court incorrectly interpreted § 107(a) by requiring her to prove (1) that specific defendants transported materials containing hazardous substances to the Prisco landfill and (2) that those materials actually released hazardous substances. Her second argument is right, but unhelpful because she is wrong about the first, which determines the outcome of her claim.

■■ Although CERCLA imposes a far-reaching strict liability scheme, it is not so far-reaching that anyone who has ever transported waste material to a site becomes a potentially responsible party within the meaning of § 107(a)(4) even if the material was wholly innocuous, with no hazardous substance in it. The plain language of that section, referring to "any person who accepts or accepted any hazardous substances for transport," compels that conclusion. To impose liability on a defendant, a CERCLA plaintiff must prove more than that a defendant transported material to the site; he or she must show that the material contained a hazardous substance. The district court therefore correctly required Prisco to prove that specific defendants in fact transported hazardous substances to the Prisco landfill in order to establish their potentially responsible party status under § 107(a)(4).

■ The district court finding that Prisco had failed to prove that any specific defendant transported hazardous substances to the Prisco site was not clearly erroneous. Prisco presented evidence tending to link four specific defendants to materials that arguably contained hazardous substances: Stamford (metal pipes, wires, painted wood, stained wood), APF (pipes, metal, carpets, wood), A–1 (wire, carpets), and A & D Carting Corp. (tires, carpets). Except with regard to Stamford, however, all of this evidence was provided by John Smith, whom the court, acting as fact-finder, held to be "not sufficiently credible as a sole basis for liability" on this issue. *See Prisco VI*, 1996 WL 596546 at *10. Prisco, who purports to adopt all of the district court's fact-findings, does not challenge this determination. She therefore could not prevail against APF, A–1 or A & D Carting.

■ The claim as to Stamford is not so easily disposed of because a Stamford vice president corroborated Smith's testimony by confirming that Stamford deposited painted and stained wood, possibly in addition to pipes and wires, at the Prisco landfill. But the district court also found that Prisco had failed to prove that Stamford's wood, pipes, and wires contained hazardous substances. *See id.* at *11–12 & n. 16. Prisco's evidence in that regard was mainly the testimony of her expert Charles Rich. He testified that "the contaminants that have been identified in the

different media at this site were or could have been attributable to those sorts of materials that apparently were brought into this site in the form of metal pipes, wire, painted or chemically treated wood." In addition, Lawrence Gallagher of the DEC testified by way of affidavit that construction and demolition material such as painted and chemically treated wood, metal pipes, and wiring can result in the leaching of various contaminants. But the district court, acting as factfinder, was not persuaded by this general and indirect evidence that any of the material actually deposited by Stamford in fact contained a hazardous substance. *See Prisco VI,* at \*11–12 and n. 16. Noting again Prisco's adoption of the district court's findings of fact, we do not think it was clear error for the court to reach that conclusion.

 The district court did err, however. It should not have required Prisco to establish that any hazardous substance containing materials that a given defendant transported to the landfill actually released those substances into the soil or water. We recently had occasion to consider this issue in *B.F. Goodrich v. Betkoski.* There, we specifically rejected such an independent releasability requirement, reasoning that it would amount in substance to "asking the plaintiffs to prove that a specific defendant's hazardous substances caused the release of a hazardous substance. No causation is needed, however, to establish liability under CERCLA, *see Alcan,* 990 F.2d at 721, because it is, as stated, a strict liability statute." *Betkoski,* 99 F.3d at 517 (citations omitted). Notably, in reaching this conclusion, *Betkoski* rejected the reasoning of *B.F. Goodrich Co. v. Murtha,* 815 F.Supp. 539 (D.Conn.1993) and *B.F. Goodrich Co. v. Murtha,* 840 F.Supp. 180 (D.Conn.1993), two of the decisions upon which the district court's analysis below relied. *See Betkoski,* 99 F.3d at 516–17. The district court therefore erred by imposing a requirement that Prisco prove not only that particular defendants transported material containing hazardous substances, but also that those materials broke down and released those substances into the environment.

 The error, however, is harmless. Because the district court's conclusion that

Prisco failed to prove that any particular defendant transported a hazardous substance to the site was not clearly erroneous, no particular defendant can be held liable irrespective of the wrongly imposed independent releasability requirement.

### b. *Other Categories of Potentially Responsible Parties*

Prisco argues that some of the defendants should have been found to be potentially responsible parties under categories of § 107(a) other than the transporter category. She contends, for example, that Stamford may be held liable not only as a transporter but also as a generator of hazardous substances. *See* § 107(a) (42 U.S.C. § 9607(a)(3)). Stamford responds that this argument should not be considered because this issue is being raised for the first time on appeal. *See United States Fire Ins. Co. v. National Gypsum Co.,* 101 F.3d 813, 817 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2512, 138 L.Ed.2d 1015 (1997). Prisco rejoins that she did not argue this at trial because she reasonably believed the potentially responsible party issue to have been settled.

It does not matter who is right. Central to this claim, too, is proof that hazardous substances were indeed generated by a particular defendant. As discussed above, the district court, as finder of fact, concluded that the presence of any hazardous substances in Stamford's material was not proven, and we have held that determination not to have been clear error. Even if appropriately considered on this appeal, then, Stamford still cannot be held liable on this theory.

Finally, Prisco argues that the trial court erred by rejecting the argument that defendants LaBate and AFC may be held liable as responsible parties because they were operators of the Prisco landfill at the time hazardous substances were deposited there. *See* § 107(a)(2) (42 U.S.C. § 9607(a)(2)). Again, however, our prior analysis of the transporter liability issue compels the opposite conclusion. Although it is clear that some hazardous substances are now at the site, it is unproven whether they were or were not already there when the LaBate/AFC opera-

tion began. The district court, as fact-finder, decided that Prisco had not carried her burden of proof on this issue, and on appeal Prisco has provided no basis for this Court to conclude that that decision was clearly erroneous.

### 2. *The Procedural Issue*

The district court's post-trial revisitation of the potentially responsible party issue came as a considerable surprise to Prisco, who thought with good reason that the question had been laid to rest in her favor at the summary judgment stage in *Prisco III.* If that was going to be an issue at trial, she contends, she should have been told so in order to enable her to address it. Invoking the "second branch" of the law of the case doctrine, Prisco asserts that her reversal of fortune constitutes reversible error.

■ The second branch of the law of the case doctrine is implicated when a court reconsiders its own ruling in the absence of an intervening ruling of a higher court. *See United States v. Uccio,* 940 F.2d 753, 757–58 (2d Cir.1991).[10] It holds "that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *Id.* at 758.

The rule is not absolute, however. "[T]he decision whether or not to apply law-of-the-case is ... informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine." *Id.* (citing *United States v. Birney,* 686 F.2d 102, 107 (2d Cir. 1982); *First National Bank of Hollywood v. American Foam Rubber Corp.,* 530 F.2d 450, 453 n. 3 (2d Cir.), *cert. denied,* 429 U.S. 858, 97 S.Ct. 157, 50 L.Ed.2d 135 (1976)). "Prejudice" in this context "does not mean harm resulting from the failure to adhere to the prior decision," but instead " 'refers to a lack of' ... sufficient 'opportunity to prepare armed with the knowledge that' " the prior ruling is not deemed controlling. *Id.* (quoting *Birney,* 686 F.2d at 107).

■ In this case, the district court departed from its prior ruling in order to correct an error of law. This is an obviously valid reason for such a departure. *See id.* But revisiting, without notice, the responsible-party issue, which ultimately turned on the sufficiency of Prisco's evidence, raises the specter of severe prejudice to Prisco if it deprived her of the opportunity to prepare and present evidence on that issue at trial.

■ Commendably candid concessions made by Prisco on appeal, however, plainly establish that she was not in fact prejudiced by the district court's turnaround. She expressly admits that she would not have had proof to establish that any specific defendants brought hazardous substances to the site, even had she been timely apprised that this was to be a key issue at trial. In her brief, Prisco concedes that she

> lacked direct knowledge of what was specifically contained in each waste hauler's materials. Once hazardous substances were discovered at the site after months of deliveries of many truckloads of materials by many defendants, materials that were mixed and co-mingled together, the District Court's insistence that plaintiff produce direct evidence of the ingredients and/or chemicals contained in each defendant's waste placed upon the plaintiff a burden she could never meet.

At oral argument, Prisco's counsel clarified the extent of Prisco's concession by stating in no uncertain terms that she had no evidence beyond what she introduced at the trial to demonstrate that particular defendants conveyed hazardous substances to the landfill. (Oral argument, Oct. 7, 1998). Prisco therefore was not prejudiced because she admittedly could not carry her burden of proof on this crucial issue at a new trial were we to grant one.

For the foregoing reasons, we affirm the district court's judgment on Prisco's CERCLA claim.

---

10. The "first branch" of the doctrine requires a trial court to follow an appellate court's previous ruling on an issue in the same case. *See id.* at 757 (citing *United States v. Cirami,* 563 F.2d 26, 32 (2d Cir.1977)).

II. *Whether the district court erred in dismissing Prisco's RCRA claim against the private defendants*

### A. *RCRA*

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). "Unlike [CERCLA], RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." *Id.* Its purpose "is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Id.* (quoting 42 U.S.C. § 6902(b)).

In furtherance of that goal, RCRA contains a private attorney-general provision allowing citizen lawsuits for injunctive relief in certain circumstances. *See* RCRA § 7002, 42 U.S.C. § 6972. One such circumstance, invoked here, is described in § 7002(a)(1)(B) (42 U.S.C. § 6972(a)(1)(B)), which provides any person with a right of action

> against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B).

Thus, in order to establish rights under this section, a RCRA plaintiff must show that: (1) the defendant was or is a generator or transporter of solid or hazardous waste or owner or operator of a solid or hazardous waste treatment, storage or disposal facility, (2) the defendant has contributed or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste, as defined by RCRA, and (3) that the solid or hazardous waste in question may pose an imminent and substantial endangerment to health or the environment. *See id.; ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 359 (2d Cir.1997).

### B. *The Decision in* Prisco III

In *Prisco III*, the district court considered cross-motions for summary judgment on the RCRA claim as it did on the CERCLA claim. *See* 902 F.Supp. at 393–96. It recognized that construction and demolition material is a form of solid waste and thus that each of the defendants was potentially liable as an operator, generator, or transporter contributing to the handling, storage, transportation, or disposal of solid waste. *See id.* The court found further that Prisco had established that at the time of the preliminary site assessment, an imminent and substantial risk of harm may have existed. *See id.* at 394–95. Recognizing, however, that the equitable relief to which Prisco might be entitled under RCRA would lie only to remedy an ongoing RCRA violation, the court declined to grant summary judgment to Prisco because there remained a triable issue of fact as to whether the possible risk of harm continued to exist. *See id.* at 395.

### C. *The decision in* Prisco VI

In its post bench-trial opinion, the district court explained its conclusion that none of the private defendants was liable under RCRA. *Prisco VI*, 1996 WL 596546, at *15. The court recognized that it previously had found that each defendant was potentially liable as a past generator or transporter of, or operator with regard to, solid waste and that a risk of imminent and substantial endangerment might exist at the Prisco landfill generally. *See id.* at *14. The court concluded, however, that these factors were insufficient to affix RCRA liability to any particular defendant, reasoning that Prisco was further obligated to establish a link between the waste attributable to an individual defendant and the risk of imminent and substan-

tial endangerment. *See id.* at \*14–15. The district court rejected the notion that RCRA's use of the language "may"—"any solid or hazardous waste which *may* present an imminent and substantial endangerment"—sufficed to bring within RCRA's scope anyone who contributed any solid or hazardous waste to a site at which there later arose a possibility of risk to health or the environment from a particular solid or hazardous waste. *See id.* at \*15. The court emphasized RCRA's statutory purpose of forcing all parties in the chain of waste handling to contribute to the costs that arise from their activities, inferring from this that the statute was designed to force covered parties to internalize costs they themselves imposed. *See id.* But the court as factfinder then concluded that Prisco had failed to connect "any individual private defendant to any particular solid waste with known hazardous properties, just as she has not connected individual defendants to hazardous substances" in the CERCLA analysis. *Id.*

### D. *Analysis*

Prisco contends that the district court misconstrued RCRA § 7002(a)(1)(B) (42 U.S.C. § 6972(a)(1)(B)) in requiring her to prove that the waste attributable to particular defendants was linked to a risk of imminent and substantial endangerment. She argues that such a requirement is contrary to the statutory goal, recognized by the district court, "that generators and other persons involved in the handling, storage, treatment, transportation or disposal of hazardous wastes must share in the responsibility for the abatement of the hazards arising from their activities." *Id.* (quoting H.R. Conf. Rep. No. 1133, 98th Cong., 2d Sess. 119 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5649, 5690).

■ But the plain language of § 7002 applies the statutory remedies against those who handle, store, treat, transport, or dispose of "waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). We conclude therefore that the district court correctly interpreted § 7002(a)(1)(B) to require Prisco to prove that particular defendants' waste was of a type that could contribute to an imminent and substantial endangerment to health or the environment that may exist.

■ Did the district court correctly determine that Prisco failed to prove that particular defendants were connected to particular waste that might give rise to an imminent and substantial endangerment? In support of her argument that it did not, Prisco simply points to the same evidence upon which she attempted to rely in the CERCLA context in order to link particular defendants to hazardous substances. Just as the district court was not clearly in error in finding this evidence unpersuasive in the CERCLA context, however, it was not clearly in error in reaching the same conclusion in the RCRA context. Again, we note Prisco's acceptance of the district court's findings of fact and her conceded inability to adduce evidence linking particular defendants to harmful materials.

■ Finally, Prisco argues that the district court's resolution of her RCRA claim was a revisitation without notice of a prior ruling in her favor in *Prisco III* that the defendants were "persons" under RCRA. Not so. Nothing in *Prisco VI* suggested that the court no longer viewed the defendants as "persons" under RCRA. Indeed, the analysis of the RCRA claim in *Prisco VI* explicitly acknowledged that, unlike in the CERCLA context, all the defendants were potentially responsible parties, either as operators of a solid waste disposal facility or as generators or transporters of solid waste, consistent with its holding in *Prisco III. See* 1996 WL 596546, at \*14. The rejection of Prisco's RCRA claim in *Prisco VI* turned on the separate, theretofore unaddressed question of whether Prisco could prove that the waste attributable to particular defendants was linked to an imminent and substantial endangerment. *See id.* at \*14–15. There was no inconsistency.[11] The district court did not err in dismissing Prisco's RCRA claim.

11. Even were this viewed as a revisitation of a previously resolved issue, moreover, Prisco again

concedes an inability to meet the standard ap-

III. *Whether the district court erred in dismissing the RCRA claim as to the state defendants*

 Prisco's RCRA claim against the various state defendants [12] arose from Bubenicek's and Ward's role in the Prisco landfill operation. Specifically, Prisco argued below that state officials were aware of Bubenicek and Ward's "sting operation" as well as their role in operating the Prisco landfill, and that state officials acted to prevent closure of the landfill in order to facilitate Bubenicek's and Ward's efforts. Prisco contended that this conduct would support liability on theories of ratification, apparent authority, or *respondeat superior*. The district court disagreed as to each theory.

 We do not reach the issues of ratification, apparent authority, or *respondeat superior*. The decision below must be affirmed in any event on another basis, albeit one not explicitly employed by the district court. "We may, of course, affirm the judgment of the district court 'on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely.'" *Westport Bank & Trust Co. v. Geraghty*, 90 F.3d 661, 668 (2d Cir.1996) (quoting *Cromwell Assocs. v. Oliver Cromwell Owners, Inc.*, 941 F.2d 107, 111 (2d Cir.1991)).

The state defendants' vicarious liability becomes academic in light of Prisco's inability to prove that the waste material attributable to any particular defendant, private or otherwise, is linked to an imminent and substantial endangerment to health or the environment, as previously discussed. In other words, nothing turns on the question of whether New York and its agencies may be held accountable for the actions of Bubenicek or Ward because Prisco cannot prove that Bubenicek's or Ward's conduct, as operators of the Prisco landfill, triggers RCRA liability.

Prisco concedes that she cannot satisfy the requirements of RCRA under the district court's interpretation of that statute, which we hold to be correct. It follows that she could not succeed in establishing RCRA liability as to Bubenicek or Ward, despite the highly questionable nature of their conduct. Consequently, the state and its agencies could not be liable even were we to conclude that the district court erred in rejecting any of Prisco's theories of vicarious liability. We affirm on this ground.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

---

plied by the court in *Prisco VI* and affirmed on this appeal.

12. The manner in which the district court resolved Prisco's claims specifically against the individual state defendants is not clear from the record, although they presumably were included in the district court's dismissal of all claims against all defendants. In any event, as we explain below, inasmuch as Prisco did not establish the elements of her RCRA claim against any person or entity associated with the Prisco landfill at the time the individual state defendants were allegedly involved with its operation, she could not establish liability against any individual state defendant either as an individual or as a representative of the state.