DECISION and ORDER
 

 TELESCA, District Judge.
 

 INTRODUCTION
 

 Plaintiff, the Volunteers of America of Western New York (“VOA”), brings this action under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. (“CERCLA”), the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. (“RCRA”), and New York State statutory and common law, seeking damages for environmental contamination of two parcels of real property located at 214 Lake Avenue, Rochester, New York (“the Site”).
 
 *254
 
 Plaintiff claims that petroleum, hazardous waste, and contaminants have been released by the defendants, previous owners or operators of the Site. Among other damages, plaintiff claims that it has been forced to spend substantial sums in environmental “response costs” to date and will be forced to spend even more to cleanup the environmental contamination caused by the defendants.
 

 For the reasons set forth below, the defendants’ joint motion to dismiss is granted in part and denied in part.
 

 BACKGROUND
 

 History of the Site
 

 Plaintiff alleges that defendants Jonathan Heinrich, David Heinrich, and Heinrich Motors, Inc. (hereinafter collectively “the Heinrich Defendants”), owned and operated an automobile dealership at the Site from the 1930’s to the 1980’s. Plaintiff alleges that defendants William R. Gordon (now deceased and represented by Lois Gordon as executrix of the Estate of William R. Gordon) and Bill Gordon Chevrolet, Inc. (collectively “Bill Gordon”) owned and operated a car dealership at the Site from the 1980’s until 1997. Plaintiff alleges that defendant Rochester Gas and Electric Corp. (RG
 
 &
 
 E) owned and operated a pipe yard, coal pipe storage and barrel storage area on the back lot (“Parcel B”) of the Site from approximately the 1930’s through the 1970’s. Finally, plaintiff alleges that defendant Kaplan Contain, Inc.
 
 [1]
 
 (“Kaplan”) formerly conducted barrel operations at the Site from the 1930’s through the 1970’s.
 

 Plaintiff alleges that the various defendants have engaged in activities which resulted in the release of large quantities of petroleum (which is not classified as a CERCLA “hazardous waste”) and various hazardous waste contaminants into the soil and groundwater of the Site. Plaintiff points especially to the presence of underground storage tanks that stored gasoline for Heinrich’s operation of a gasoline service station from 1938 to 1966. Those tanks were removed in 1966, but plaintiff alleges that they released large quantities of petroleum at the Site which has now migrated into on-site and off-site soil and groundwater. Plaintiff also points to various “Toxic Chemicals” which Heinrich and Bill Gordon allegedly released at the Site into underground storage tanks, floor drains, sewers, sumps, and catch basins. Finally, plaintiff points to toxic contaminants allegedly released by RG & E and Kaplan on Parcel 2 of the Site, resulting from their operations of the pipe yard, coal pipe storage, barrel making, and barrel storage operations.
 

 Plaintiff alleges that the New York State Department of Environmental Conservation (“DEC”) contends that petroleum and possibly toxic chemicals from the Site have migrated into deep bedrock groundwater and may be migrating into Monroe County’s combined sewer overflow tunnel, or into the Genesee River.
 

 Plaintiff’s Acquisition of the Site
 

 In 1995, VOA began looking for a possible site to relocate its existing day care centers, to build a super thrift store, and to consolidate its administrative offices. VOA alleges that, if it failed to provide a new day care facility for approximately 300 inner-city children by 1998, it risked losing federal funding. VOA asserts that it searched for a new location in the City of Rochester for over a year, but was unable to find a suitable location to meet its requirements, until 1996 when it discovered the Site.
 

 In September of 1996, while considering whether to purchase the Site, VOA learned that an environmental “Phase II” site assessment had already been completed by GZA GeoEnvironmental, Inc. (“GZA”) for
 
 *255
 
 a former prospective purchaser of the Site (“the GZA Phase II Report”). That Report revealed the presence of petroleum contamination in subsurface soil and groundwater on Parcels A and B, and isolated toxic chemicals on Parcel B.
 

 VOA agreed to perform investigative work pending preliminary consideration by the State and County Departments of Health (“DOH’s”) as to whether the Site could be used for VOA’s contemplated uses. The DOH’s made certain recommendations (including, inter alia, installation of a separate air ventilation system for the day care center, capping the contamination area with two feet of clean soil, and completing remediation work). VOA contracted with GZA to perform a Supplemental Phase II Report, testing soil and groundwater. That investigation revealed further contamination by heavy lube oil and various other chemical compounds.
 

 Nonetheless, VOA remained interested in purchasing and developing the Site due to the availability of the DEC’s “Voluntary Cleanup Program” (“VCP”), which allows “volunteers” (parties not responsible for the contamination) who redevelop a contaminated site, to receive an assignable liability release to run with the land.
 

 From January, 1997 to November, 1997, VOA engaged in negotiations with Bill Gordon for acquisition of the Site and with the City of Rochester for approvals for the project. The City required VOA to enter into a PILOT Agreement to pay taxes and requested an option on Parcel B, which VOA granted.
 

 On October 30, 1997, VOA submitted an application to the DEC for the VCP. Before receiving any indication as to whether it would be eligible for the VCP, VOA nonetheless purchased the Site on November 19, 1997. Several days later, VOA representatives met with the DEC to make a presentation regarding the Site. The DEC suggested that VOA undertake limited remedial activities prior to preparation of a formal Remedial Action Plan.
 

 On December 5, 1997, DEC determined that VOA was eligible to participate in the VCP. VOA began remediation activities— installation of geoprobe boreholes and groundwater monitoring wells, removal of underground storage tanks, removal of floor drains, and remediation of soil. However, the DEC staff previously assigned to the project were reassigned and the new staff determined that much more extensive work, including drilling bedrock wells, would be necessary. DEC did eventually agree to pay for the bedrock wells.
 

 On August 26, 1998, VOA executed a Warranty Deed, conveying the Site to the County of Monroe Industrial Development Agency (“COMIDA”), and leased the property back from COMIDA. VOA was never able to negotiate an agreement with the DEC to make VOA a VCP. VOA has completed its redevelopment of the Site and some remediation activities, including replacing the soil to a depth of approximately 15 feet and remediation of the groundwater plume. Plaintiff claims that the Site’s value has been diminished by approximately $1.8 million and that the cost of further remediation will be substantial.
 

 Plaintiff alleges the following causes of action: (1) strict liability under CERCLA § 107 against all defendants as past “owners” or “operators” of the facility for past and future response costs; (2) for contribution under CERCLA § 113(f)(1) against all defendants for contribution of their individual shares of the response costs; (3) to “abate an imminent and substantial endangerment” pursuant to RCRA § 7002(a)(1)(B), seeking an Order of this Court directing all defendants to remediate the contamination; (4) strict liability pursuant to New York Navigation Law § 181(5) for response costs relating to petroleum contamination; (5) for indemnification or contribution and declaratory judgment under Navigation Law Article 12; (6) common law negligence; (7) common law claim for strict liability for abnormally hazardous activities; (8) common law claim for public nuisance; (9) common law
 
 *256
 
 claim for indemnification and contribution relating to costs incurred pursuant to the New York State Superfund Law; (10) common law claim for equitable or implied indemnification; (11) equitable restitution; and (12) a claim against the insurance company defendants under the New York Navigation Law § 190 to recover the costs of clean-up regarding the petroleum contamination.
 

 Defendants’ Joint Motion to Dismiss
 

 The Heinrich Defendants, Bill Gordon, RG & E, and Kaplan jointly move to dismiss portions of the Complaint pursuant to Fed.R.Civ.Pro. 12(b)(6) for failure to state a cause of action. Defendants seek dismissal of Count 1 (the CERCLA strict liability claim), arguing that plaintiff is a “potentially responsible party” under CERCLA and, therefore, is limited to a claim for contribution under CERCLA § 118 and not a strict liability claim under § 107. Defendants seek dismissal of Counts 6 through 11 (common law causes of action) on the basis that those claims are preempted by CERCLA. Defendants seek dismissal of Count 3 (the RCRA claim) on the basis that (a) plaintiff failed to give defendants 90-days notice of this claim as required by RCRA, and (b) plaintiff has failed to allege any “imminent and substantial endangerment” to health or the environment. Defendants seek dismissal of Count 5, arguing that Article 12, § 176(8), of the Navigation Law does not provide a private cause of action. Defendants seek dismissal of Count 7, arguing that, as a matter of law, storage of petroleum does not constitute an ultra-hazardous activity under New York law. Finally, defendants seek dismissal of Count 9, arguing that the New York Superfund Law does not provide for any private cause of action.
 

 DISCUSSION
 

 Motion to Dismiss Standard
 

 Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of the complaint where the plaintiff has failed to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief.
 
 Ferran v. Town of Nassau,
 
 11 F.3d 21, 22 (2d Cir.1993),
 
 cert. denied,
 
 513 U.S. 1014, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994). The court may grant a Rule 12(b)(6) motion only where “ ‘it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.’ ”
 
 Allen v. WestPoint-Pepperell, Inc.,
 
 945 F.2d 40, 44 (2d Cir.1991) (quoting
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).
 

 Count 1
 
 — Strict
 
 Liability under CERCLA § 107(a)
 

 Defendants move to dismiss Count 1 of plaintiffs complaint, which alleges that defendants are strictly liable under CERCLA § 107(a). CERCLA § 107(a) establishes four classes of potentially responsible parties for response costs associated with the clean-up of hazardous substances: (1) present owners and operators of facilities that accepted hazardous substances; (2) past owners and operators of such facilities; (3) generators of hazardous substances; and (4) certain transporters of hazardous substances. 42 U.S.C. § 9607(a). Liability in a § 107 “cost action” is strict as well as joint and several where the harm is not divisible. CERCLA § 113 provides for a contribution action, stating that “any person may seek contribution from any other person who is liable or potentially liable under § 107(a)”. 42 U.S.C. § 9613(f)(1). Liability under § 113 is several.
 

 Defendants argue that plaintiff is a “potentially responsible party” under CERCLA as a former owner and current operator of the Site. Accordingly, defendants argue that plaintiff is limited to an action for contribution under CERCLA § 113
 
 *257
 
 and cannot bring a cost recover action under CERCLA § 107. In support of this argument, defendants point to two Second Circuit Court of Appeals cases,
 
 Bedford Affiliates v. Sills,
 
 156 F.3d 416 (2nd Cir.1998) and
 
 Prisco v. A & D Canting Corp.,
 
 168 F.3d 593 (2nd Cir.1999), which hold that a potentially responsible party may not bring a CERCLA § 107(a) cost recovery claim against other responsible parties, but is limited to a CERCLA § 113 contribution claim.
 

 Defendants also point to
 
 Seneca Meadows v. ECI Liquidating, Inc.,
 
 16 F.Supp.2d 255 (W.D.N.Y.1998), in which Chief Judge Larimer held that a potentially responsible party is limited to a § 113 contribution claim, in order to
 

 eliminate the ancillary and piecemeal litigation that would otherwise result if a potentially responsible party was allowed to recover all of its response costs under § 107 from the defendants and then those same defendants would be required to prosecute a contribution claim under § 113 against plaintiff in order to collect plaintiffs pro rata share.
 

 Id.
 
 at 259.
 

 Plaintiff argues that it is not limited to § 113 contribution claim as a “potentially responsible party” because it will be entitled to assert a defense to § 107(a) liability. Specifically, plaintiff argues that, as a landowner which did not pollute the Site in any way, VOA will qualify for the CERC-LA “third party” and “innocent purchaser” defenses under CERCLA § 107(b). Defendants dispute the availability of these defenses to VOA.
 

 I need not decide the issue of whether VOA is entitled to assert the § 107(b) defenses at this stage of the litigation. For purposes of a Rule 12(b)(6) motion, it is sufficient that VOA
 
 alleges
 
 facts supporting the possibility that they are available to VOA. If plaintiff ultimately proves that it is protected by one of the § 107(b) defenses, then it could maintain a cause of action under § 107(a) against the defendants, since the
 
 Bedford
 
 court specifically limited its holding to potentially responsible persons who are not entitled to any of the § 107(b) defenses.
 
 See Bedford,
 
 156 F.3d at 425 [“we hold that a potentially responsible person under § 107(a)
 
 that is not entitled to any of the defenses enumerated under
 
 §
 
 107(b)
 
 —like Bedford— cannot maintain a § 107(a) action against another potentially responsible person” (emphasis supplied) ]. If plaintiff is not ultimately entitled to any of the § 107(b) defenses, then plaintiff would be limited to a § 113 contribution claim under CERCLA.
 

 Accordingly, defendant’s motion to dismiss Count 1 of the Complaint is denied.
 

 Counts 6 through 11
 
 — CERCLA
 
 Preemption of Common Law Claims
 

 Defendants also move to dismiss Counts 6 through 11 of the Complaint (alleging various common law causes of action) on the basis that those claims are preempted by CERCLA as claims for reimbursement for CERCLA response costs. Plaintiff argues that CERCLA preempts only common law claims for contribution or restitution, not all common law claims. Plaintiff further argues that Counts 6 through 11 state claims for damages other than restitution or contribution and are, therefore, not preempted.
 

 The Second Circuit Court of Appeals in
 
 Bedford Affiliates v. Sills,
 
 156 F.3d 416, 426 (2nd Cir.1998) specifically held that “CERCLA preempts the state law remedies of restitution and indemnification.” The
 
 Bedford
 
 court noted that CERCLA does not preempt all state law claims. However, due to the carefully-crafted statutory settlement scheme found in CERC-LA as a result of the SARA Amendments (Superfund Amendments and Reauthorization Act of 1986), the court determined that Congress intended to preempt any state law claim which seeks as a remedy contribution or indemnification for the same damages that would be available under CERCLA. CERCLA does not prevent a plaintiff from recovering damages under state law that are not duplicative of
 
 *258
 
 the damages it recovers under CERCLA.
 
 Minyard Enterprises, Inc. v. Southeastern Chemical & Solvent Co.,
 
 184 F.3d 373 (4th Cir.1999)
 

 Accordingly, while plaintiff cannot recover indemnification or contribution for CERCLA damages by alleging alternative state law causes of action, CERCLA does not completely preempt plaintiffs state law claims to the extent those claims seek damages which are not available under CERCLA. Plaintiff argues that certain items of damages which have been alleged in this case, such as clean-up costs of petroleum spills, are not available under CERCLA. Defendants concede in their reply memorandum of law that certain petroleum spills are not covered by CERC-LA, although they argue that the petroleum exclusion is narrower than plaintiff contends. (Defendants’ Joint Reply Memorandum of Law, p. 7).
 

 Because plaintiff has alleged conduct which may fall under CERCLA’s “petroleum exclusion” (such as releases of unadulterated gasoline), I find that the plaintiff may have claims for damages which are not identical to the damages available under CERCLA. Therefore, to the extent that plaintiffs common law causes of action seek recovery for damages that are different than the damages available under CERCLA, the common law claims are not preempted.
 

 Accordingly, defendant’s motion to dismiss Counts 6 through 11 on the basis of CERCLA preemption is denied.
 

 Count 3
 
 — RCRA
 
 Claim
 

 Defendants move to dismiss Count 3 of the Complaint (which alleges a violation of RCRA), on the alternative grounds that (a) plaintiff failed to provide the parties with the requisite 90-days notice prior to filing suit, and (b) plaintiff has failed to allege •any “imminent and substantial endangerment to health or the environment,” as required for a claim under RCRA § 7002(a)(1)(B). Defendants argue that a mere showing of contamination is not sufficient. Rather, plaintiff must show a present or threatened risk of serious harm to human health or the ecology. Defendants argue that plaintiffs use of the Site as a daycare center (with the approval of the state and county Departments of Health) belies the plaintiffs allegations of “imminent and serious endangerment.”
 

 .1 decline to reach such a factual conclusion as a matter of law on a Rule 12(b)(6) motion. The plaintiff has sufficiently alleged that toxic contamination is present on the site and is creating the threat of serious harm to the ecology through migration into the deep bedrock and possibly groundwater. These allegations are sufficient to state a valid citizen’s suit cause of action under RCRA.
 

 However, plaintiff has admittedly failed to serve some of the defendants with the requisite notice 90 days prior to filing suit, as required by RCRA.
 
 See
 
 42 U.S.C. § 6972(b)(2)(A)(iii). Plaintiff alleges in the Complaint that prior notice was provided on January 25, 1999 to defendants Jonathan Heinrich and Heinrich Motors, Inc., but that notice to the other defendants was not sent until June 4, 1999.. (Complaint, 11112). The suit was commenced on June 7, 1999. Plaintiff has therefore failed to comply with the RCRA statutory requirements as to all defendants except Jonathan Heinrich and Heinrich Motors, Inc. The prior notice requirement is jurisdictional and cannot be disregarded at the Court’s discretion.
 
 Hallstrom v. Tillamook County,
 
 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). Accordingly, plaintiffs RCRA cause of action (Count 3) is hereby dismissed for lack of subject matter jurisdiction as against all defendants except Jonathan Heinrich and Heinrich Motors, Inc.
 

 Count 5
 
 — New
 
 York Navigation Law, Article 12 (“The Oil Spill Law”)
 

 Defendants move to dismiss Count 5 of plaintiffs Complaint (alleging a claim under Article 12 of the New York State Navigation Law) for failure to state a
 
 *259
 
 claim, arguing that Article 12 does not provide any private cause of action, except under § 181(5).
 

 Plaintiff argues that a private cause of action is available under Navigation Law § 176 for contribution, as well as a direct damages suit under § 181(5). Indeed, New York Navigation Law § 176(8) provides that
 

 Notwithstanding any other provision of law to the contrary, including but not limited to section 15-108 of the general obligations law, every person providing cleanup, removal of discharge of petroleum or relocation of persons pursuant to this section shall be entitled to contribution from any other responsible party.
 

 N.Y. Navigation Law § 176(8) (McKinney’s 1989 and Supp.1999-2000).
 

 By the plain language of the statute, plaintiff does have the right to seek contribution from any other responsible party for costs incurred in providing cleanup or removal of discharge of petroleum pursuant to Navigation Law § 176(8). Accordingly, defendants’ motion to dismiss Count 5 is denied.
 

 Count 7
 
 — Strict
 
 Liability for Ultra-hazardous Activities
 

 Defendants move to dismiss Count 7 of plaintiff’s complaint (a claim under the common law for strict liability for ultra-hazardous activities). Defendants argue that, as a matter of law, the storage of gasoline does not constitute an ultra-hazardous activity for which strict liability for contamination will attach.
 
 750 Old Country Road Realty Corp. v. Exxon Corp.,
 
 229 A.D.2d 1034, 645 N.Y.S.2d 186 (4th Dept. 1996).
 

 Plaintiff acknowledges in its Memorandum of Law that “VOA has not alleged that the Petroleum Contamination is an ultrahazardous activity included in its strict liability cause of action, since its attorneys are well aware of the holding in
 
 750 Old Country Road
 
 ...” (Plaintiffs Memorandum of Law in Opposition, p. 20). Rather, VOA claims that storage (in potentially leaky tanks) or dumping of “toxic chemicals” constitutes an ultra-hazardous activity.
 

 However, as discussed
 
 infra,
 
 common law claims which seek indemnification or contribution for CERCLA damages are preempted by CERCLA.
 
 See Bedford Affiliates v. Sills,
 
 156 F.3d 416 (2nd Cir.1998). Since plaintiff acknowledges that the damages sought in Count 7 are not for petroleum spills, but rather for toxic chemical contamination, the damages recoverable under Count 7 are identical to those sought under CERCLA and the claim is, therefore, preempted.
 

 Accordingly, defendants’ motion to dismiss Count 7 is granted and that claim is hereby dismissed.
 

 Count 9
 
 — Claim
 
 for Indemnification under New York Superfund Law
 

 Finally, defendants move to dismiss Count 9 of plaintiffs complaint which purports to seek indemnification under the New York Superfund Law, Article 27, Title 13 of the New York State Environmental Conservation Law (“ECL”). Defendants argue that no private cause of action is available under the ECL, which explicitly authorizes only the New York State Department of Environmental Conservation and the Attorney General to enforce ECL Article 27.
 

 Plaintiff concedes in its Memorandum of Law that no private cause of action exists under the New York Superfund Law, but argues that its claim in Count 9 is actually a claim for common law indemnification or contribution to recover any amounts VOA may be obligated to pay under the Superfund Law (including the Voluntary Cleanup Program).
 

 Again, to the extent that plaintiff seeks common law contribution or indemnification for damages which are available under CERCLA, the common law claim is preempted.
 
 See Bedford Affiliates, supra.
 
 However, to the extent plaintiff seeks common law indemnification or contribution
 
 *260
 
 for damages not recoverable under CERC-LA (such as response costs for contamination which may be characterized as a “hazardous waste” by New York State under ECL § 27-0901 which is not classified by the EPA as a “hazardous waste” under CERCLA), the claim for indemnification is not preempted.
 

 Accordingly, defendants’ motion to dismiss plaintiffs Count Nine of the Complaint is denied.
 

 CONCLUSION
 

 For the aforestated reasons, defendants’ joint motion to dismiss is granted in part and denied in part.
 

 Plaintiffs RCRA cause of action (Count 3) is hereby dismissed' for lack of subject matter jurisdiction as against all defendants except Jonathan Heinrich and Heinrich Motors, Inc.
 

 Plaintiffs common law causes of action (Counts 6 - 11) are preempted by CERC-LA to the extent that they seek indemnification or contribution for damages which are available under CERCLA. However, since CERCLA specifically excludes from coverage certain damages, including petroleum contamination (which is alleged in this case), plaintiff has properly alleged state common law claims to recover damages which are not available under CERC-LA.
 

 Plaintiffs 7th Cause of Action (strict liability for ultrahazardous activities) is hereby dismissed as preempted by CERC-LA, since plaintiff concedes that Count 7 relates not to petroleum, but rather only to “toxic chemicals,” which, as discussed
 
 infra,
 
 are covered by CERCLA.
 

 The remainder of the defendants’ joint motion to dismiss is denied.
 

 ALL OF THE ABOVE IS SO ORDERED.
 

 [1]
 

 . Kaplan notes in it's motion to dismiss that the correct legal name of the entity is "Kaplan Container Corp.”