**THE DURHAM MANUFACTURING COMPANY, Plaintiff,**

v.

**MERRIAM MANUFACTURING COMPANY and Allan E. Adams, Defendants.**

**No. 3:99CV02583 GLG.**

United States District Court, D. Connecticut.

Jan. 9, 2001.

Eric Lukingbeal, James P. Ray, Richard Michael Fil, Robinson & Cole, Hartford, CT, for plaintiff.

Joseph P. Williams, Amy E. Souchuns, Shipman & Goodwin, Hartford, CT, for defendant.

## RULING ON DEFENDANTS' MOTION TO DISMISS COUNTS ONE AND FOUR

GOETTEL, District Judge.

In this environmental action brought under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.* ("CERCLA"), and state law, plaintiff, Durham Manufacturing Company ("Durham"), seeks to recover a portion of the costs it has incurred, and will continue to incur, in the investigation and remediation of a Superfund site in Durham, Connecticut. The defendants, Merriam Manufacturing Company ("Merriam") and Allan E. Adams, have moved to dismiss [**Doc. # 14**] counts one and four of plaintiff's complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Defendants argue that count one must be dismissed because Durham, as a potentially responsible party ("PRP"), cannot bring a claim under § 107(a) of CERCLA, 42 U.S.C. § 9607(a), for the recovery of costs associated with the remediation of a Superfund site. Rather, its claim must be brought as a claim for contribution under § 113(f), 42 U.S.C. § 9613(f). Defendants argue that count four, plaintiff's claim for indemnification under Conn.Gen.Stat. § 22a–452(a), must be dismissed on preemption grounds. For the reasons set forth below, defendants' motion to dismiss will be granted in part and denied in part.

1. The Merriam premises are owned by defen-

## DISCUSSION

In ruling upon a motion to dismiss for failure to state a claim upon which relief may be granted, the Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is not warranted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In accordance with this standard, the following factual allegations are taken from plaintiff's complaint.

On June 30, 1997, Durham and the United States Environmental Protection Agency ("EPA") entered into an Administrative Order on Consent For Remedial Investigation/Feasibility Study and Other Work (the "AOC") for the Durham Meadows Superfund Site. This Superfund site includes the Durham premises at 201 Main Street, where Durham has operated a metal box fabrication business since 1922; the Merriam premises at 275–281 Main Street, where Merriam operated another metal box fabrication business from 1854 to 1998;[1] as well as other premises owned by entities not parties to this action. Pursuant to the AOC, Durham has performed groundwater sampling that identified contaminants at the Superfund site and in nearby residential drinking water supply wells that were "consistent with" contaminants found at the Merriam premises. Durham alleges that "[u]pon information and belief, the hazardous wastes and/or hazardous substances attributable to the defendants' operation have migrated in, onto, or under the portion of the Durham Meadows Superfund Site which [Durham] is or may be required ... to investigate, monitor, and/or remediate." (Pl.'s Compl. ¶ 26.) Durham further alleges that

[t]he hazardous wastes and/or hazardous substances that may be attributable to

dant Adams.

the [Durham] Premises *are divisible from* the hazardous wastes and/or hazardous substances that are present at the [Merriam] Premises and other portions of the Durham Meadows Superfund Site.

(Pl.'s Compl. ¶ 27) (emphasis added). Durham alleges that it has incurred, and will continue to incur, costs in the investigation and remediation of this Superfund site.

In count one, plaintiff seeks recovery under § 107(a) of CERCLA for "the response costs incurred and to be incurred by [Durham] for the release of hazardous substances at the [Merriam] Premises and that portion of the Durham Meadows Superfund Site not attributable to the [Durham] Premises." (Pl.'s Compl. at ¶ 37.) In count two, plaintiff seeks contribution from defendants pursuant to § 113(f) of CERCLA. Count three is a claim for declaratory and equitable relief pursuant to the Connecticut Environmental Protection Act, Conn.Gen.Stat. § 22a–14, *et seq.* Count four seeks indemnification under Conn.Gen.Stat. § 22a–452.

*Count One: Recovery of Remediation Costs under CERCLA § 107(a)*

In *Bedford Affiliates v. Sills*, 156 F.3d 416, 423 (2d Cir.1998), the Second Circuit discussed the relationship between § 107(a) and § 113(f)(1) of CERCLA. "CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA),[2] provides two legal avenues by which a private party can recoup some or all of the costs associated with an environmental cleanup: a cost recovery action under § 107(a)[3] and a contribution action under § 113(f)(1)."[4] Section 107(a) is a strict liability statute, which holds four classes of persons, called "potentially responsible persons," strictly liable for necessary cleanup costs incurred by the Government or any other person "consistent with the national contingency plan." *Id.* (quoting 42 U.S.C. § 9607(a)(4)(B)). "Where the environmental harm is indivisible, multiple responsible persons will be jointly and severally liable for cleanup costs." *Id.* Section 113(f)(1), on the other hand, is a contribution statute, which allows a PRP to seek contribution from other PRP's for their respective shares of the environmental cleanup costs. In *Bedford Affiliates*, the Court held that a PRP, (who does not establish entitlement to one of the four affirmative defenses set forth in subsection (b)), cannot bring an action under

---

2. Prior to 1986, CERCLA did not contain a contribution provision.

3. Section 107(a) of CERCLA provides in relevant part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
> (1) the owner and operator of a ... facility
> ......
> (4) ... from which there is a release ... of a hazardous substance, *shall be liable* for—
> (A) all costs of removal or remedial action incurred by the United States Government or a State ...;
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; ...

42 U.S.C. § 9607(a) (emphasis added). To mitigate the potentially harsh results of strict liability under subsection (a), Congress created in subsection (b) four statutory affirmative defenses to liability based upon causation. *Bedford Affiliates*, 156 F.3d at 425. Under subsection (b), if a person otherwise liable can establish by a preponderance of the evidence that the release of hazardous substances and damages resulting therefrom were caused "solely" by an act of God, an act of war, an act or omission of a third party (with certain exceptions set forth in the statute), or any combination thereof, he or she may escape liability under subsection (a). 42 U.S.C. § 9607(b).

4. Section 113(f)(1), 42 U.S.C. § 9613(f)(1), provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title.... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate....

§ 107(a) against another PRP, but is instead relegated to a § 113(f)(1) action for contribution. *Id.* at 425. The Second Circuit expressly declined to allow a PRP to elect recovery under the two statutes. To do so, it held, would render § 113(f)(1) meaningless. *Id.* at 424. Accordingly, the Second Circuit held that a PRP's right of recovery for that portion of the costs exceeding its equitable share must be brought as a claim for contribution under § 113(f). *Id.*

Likewise, in *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 603 (2d Cir.1999), the Court held that "[w]here a party seeking to recover response costs is itself a potentially responsible party within the meaning of § 107(a), ... [it] may not bring suit for full recovery under § 107.... Such a plaintiff is limited instead to an action for contribution from other potentially responsible parties under CERCLA § 113(f)(1)...."[5]

Based on the Second Circuit's holdings in *Bedford Affiliates* and *Prisco*, defendants assert that, because plaintiff is a PRP, its § 107(a) claim must be dismissed.

Plaintiff does not deny that it is a PRP. Indeed, its complaint supports its status as such. Plaintiff alleges that since 1922 it has operated the same type of business as defendants and that its premises are located on the Superfund site identified by the EPA and placed on the National Priorities List under CERCLA. It further alleges that it has undertaken certain investigatory, monitoring, and remedial actions pursuant to the AOC entered into with the EPA. It also does not deny that there are hazardous wastes associated with its premises. Instead, it states that the "hazard-

ous wastes and/or hazardous substances that may be attributable to [its] Premises are divisible from the hazardous wastes and/or hazardous substances that are present at [defendants'] Premises and other portions of the Durham Meadows Superfund Site." (Pl.'s Compl. at ¶ 27.)

Based upon the binding precedent of *Bedford Affiliates* and *Prisco*, plaintiff, as a PRP, must assert its claim for recovery of a portion of the remediation costs against defendants under 113(f), unless plaintiff can establish that it is entitled to one of the affirmative defenses of § 107(b). *See Volunteers of America of Western New York v. Heinrich*, 90 F.Supp.2d 252, 257 (W.D.N.Y.2000) (holding that a PRP is limited to a § 113 contribution claim, but denying a motion to dismiss on the ground that the plaintiff had alleged facts supporting the possibility of an available defense under § 107(b)). Under § 107(b)(3), a PRP can escape liability by proving that "the release or threatened release of a hazardous substance and the damages resulting therefrom were caused solely by an act or omission of a third party." 42 U.S.C. § 9607(b)(3) (often referred to as the "innocent owner" defense).

■ In an effort to invoke the "innocent owner" defense of 107(b)(3), plaintiff has asserted that the Durham Meadows Superfund Site is divisible into separate facilities. Based upon the facts alleged as well as the overwhelming weight of authority, which has rejected the availability of this defense to a PRP seeking to claim "innocence" with respect to a portion of a site, we find that plaintiff is not entitled to this defense with respect to a portion of the

---

**5.** *See also Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R. Co.*, 142 F.3d 769, 776 (4th Cir.), *cert. denied*, 525 U.S. 963, 119 S.Ct. 407, 142 L.Ed.2d 330 (1998) (holding that § 113 must be used by parties who are themselves potentially responsible parties); *Sun Co. v. Browning–Ferris, Inc.*, 124 F.3d 1187, 1190–91 (10th Cir.1997), *cert. denied*, 522 U.S. 1113, 118 S.Ct. 1045, 140 L.Ed.2d 110 (1998) (same); *Nashua Corp. v. Norton Co.*, 116 F.Supp.2d 330, 351 (N.D.N.Y.2000)

(holding that plaintiff as a PRP could not maintain a § 107(a) action); *but see Companies for Fair Allocation v. Axil Corp.*, 853 F.Supp. 575, 580 (D.Conn.1994) (holding that a PRP under CERCLA had standing to bring a private cost recovery action under § 107(a) to recover response costs incurred or to be incurred in relation to hazardous waste cleanup of a public landfill site, and its action did not have to be cast as one solely for contribution under 113(f)).

Superfund site. *See Axel Johnson, Inc. v. Carroll Carolina Oil Co.,* 191 F.3d 409, 416 (4th Cir.1999) (citing cases).

First, plaintiff provides no facts to support its claim of divisibility. To the contrary, plaintiff alleges that Durham and Merriam were in the same type of business, presumably using many of the same types of materials. Their businesses were located in close proximity to each other, and both of their business premises are located within the Superfund site.

Second, plaintiff does not allege that it was an innocent owner or that the release of hazardous substances was caused "solely" by a third party, as required by § 107(b)(3). Instead, plaintiff argues only that "the Durham Meadows Superfund Site can and should be divided between the parties for the separate harm caused by each." (Pl.'s Mem. at 6.) Citing *United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 722 (2d Cir.1993), and § 433A of the *Restatement (Second) of Torts,* plaintiff asserts that where two or more joint tortfeasors act independently and cause a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each should be liable in damages only for its own portion of the harm.

Plaintiff's reliance on *Alcan Aluminum,* however, is misplaced. Although the Second Circuit in *Alcan Aluminum* cited § 433A of the *Restatement* as a basis for apportioning damages, it did so in the context of a *contribution* action, which is precisely the type of action defendants contend that plaintiff must maintain in this case. *Alcan Aluminum* does not stand for the proposition that plaintiff may use § 433A of the *Restatement* as grounds for asserting the "innocent owner" defense or as a basis for asserting a claim under § 107(a).

As we read plaintiff's complaint, it appears that plaintiff is asserting the "quintessential claim for contribution." *See Bedford Affiliates,* 156 F.3d at 424. In count one, plaintiff seeks recovery for a *"portion* of the Durham Meadows Superfund Site not attributable to the [Durham] Premises." (Pl.'s Compl. ¶ 37) (emphasis added). Plaintiff is not seeking to hold defendants liable for all of its remediation costs. As the Fourth Circuit explained in *Axel Johnson,* 191 F.3d at 415:

> The central difference between a cost recovery action under § 107 and a contribution action under § 113 is that in a § 107 action, a party can impose joint and several liability for *all* its cleanup costs upon the defendant. A potentially responsible person within the meaning of § 107 is, however, presumptively liable for some portion of those costs, and therefore the only recovery it could properly seek would be *partial* recovery. A claim for partial recovery of CERCLA costs will generally be indistinguishable from claim for contribution, and thus courts have held that as a general rule any claim for damages made by a potentially responsible person—even a claim ostensibly made under § 107—is considered a contribution claim under § 113.

(Original emphasis).

Based upon the facts alleged and in accordance with the Second Circuit's decisions in *Bedford Affiliates* and *Prisco,* we hold that plaintiff, as a PRP, must bring its claim for recovery of a portion of the response costs as an action for contribution under § 113(f), as plaintiff has done in count two. Count one of plaintiff's complaint for recovery under § 107(a) of CERCLA will be dismissed without prejudice.

*Count Four: Preemption of Conn.Gen. Stat. § 22a–452 by CERCLA*

Plaintiff's fourth count is brought under Conn.Gen.Stat. § 22a–452 [6] for reimburse-

---

**6.** Conn.Gen.Stat. § 22a–452(a) provides in relevant part:

Any person, firm, [or] corporation ... which contains or removes or otherwise mitigates the effects of ... hazardous

ment for the "reasonable costs expended for containment, removal or mitigation" of hazardous wastes that were discharged as a result of the negligence of defendants. Defendants assert that this claim is preempted by § 113(f) of CERCLA due to the conflict between § 22a–452 and the federal statutory settlement scheme of CERCLA that was designed to aid in the "expeditious resolution of environmental claims." *Bedford Affiliates,* 156 F.3d at 427. According to defendants, to allow claims for restitution and indemnification under this State statute would bypass this "carefully crafted settlement system, creating an actual conflict therefore between CERCLA and state common law causes of action." *Id.*

Plaintiff concedes that it is not entitled to a double recovery of damages under CERCLA § 113(f) and Conn.Gen.Stat. § 22a–452, but asserts that it still has a viable cause of action under the State statute, which provides for more extensive damages than the federal statute. (Pl.'s Mem. at 12.) Plaintiff argues that § 113 does not fully occupy the realm of environmental law under which a party may seek reimbursement, and that the relief it may obtain under Conn.Gen.Stat. § 22a–452 is broader than that available under § 113 of CERCLA. Specifically, plaintiff claims that it may recover attorney's fees under the state statute, but that such fees may not be available to it under CERCLA.[7]

The Second Circuit has held that CERCLA as a whole does not preempt state law. *Bedford Affiliates,* 156 F.3d at 426. A cursory review of the environmental caselaw reveals numerous instances where claims have been asserted under

both CERCLA and state environmental protection statutes. *See, e.g., Schiavone v. Pearce,* 79 F.3d 248, 255–56 (2d Cir.1996) (claim brought under CERCLA and Conn. Gen.Stat. § 22a–452); *Volunteers of America,* 90 F.Supp.2d at 258 (allowing plaintiff to pursue common-law causes of action to the extent that plaintiff sought damages that were different than the damages available under CERCLA).

On the other hand, there are at least three different ways in which a federal statute may preempt state or local laws. *See Bedford Affiliates,* 156 F.3d at 426. First, Congress may in express terms declare its intention to preclude state regulation in a given area. Second, preemption may be implied when federal law is sufficiently comprehensive to allow for the reasonable inference that Congress left no room for supplementary state regulation. Third, state law may be preempted to the extent that it actually conflicts with a valid federal statute. *Id.* This type of preemption is often referred to as "conflict preemption." "Conflict preemption occurs either when compliance with both federal and state regulations is a physical impossibility, ... or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal citations and quotations omitted). In this case, defendants rely on conflict preemption. The Second Circuit has cautioned that courts should not lightly infer that state law has been preempted by federal law. *Id.*

Unlike CERCLA's strict liability standard, Conn.Gen.Stat. 22a–452 requires a showing of culpability and not merely causation. *Connecticut Resources Recov-*

---

wastes resulting from any discharge ... of such substance or material or waste shall be *entitled to reimbursement from any person,* firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such ... hazardous wastes pollution or contamination or emergency resulted from the negligence or other actions of such person, firm, or corporation. When such pollution or contamina-

tion or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby.

7. This is an issue we need not decide at this time.

*ery Auth. v. Refuse Gardens, Inc.,* 229 Conn. 455, 458, 642 A.2d 697, 698 (1994); *Schiavone,* 79 F.3d at 256. By virtue of the stricter culpability standard under state law, allowing plaintiff to proceed under both state law and CERCLA would not defeat or impede any purpose or objective of CERCLA. Additionally, plaintiff has conceded that it cannot recover under state law damages that are also recoverable under CERCLA.

Thus, the critical issue then becomes whether allowing plaintiff to proceed under state law as well as § 113(f) of CERCLA defeats a Congressional purpose or objective underlying the enactment of § 113(f). Defendants cite the holding in *Bedford Affiliates* as support for this proposition. However, that case is distinguishable on its facts.

As plaintiff points out, in *Bedford Affiliates,* the plaintiff was a non-settling PRP, which was seeking to invoke state law to recover against settling PRP's. Under § 113(f)(2) of CERCLA,[8] settling PRP's are protected from contribution actions. The Court held that to allow a state-law claim for restitution against defendants, who had already settled the claims against them with the government, would bypass the "carefully crafted settlement system" of CERCLA, thus creating an actual conflict between CERCLA and state common-law causes of action. *Id.* at 427. In contrast, plaintiff in the instant case is seeking contribution from other *non-settling* PRP's who are not entitled to the protections of § 113(f)(2) of CERCLA. Allowing plaintiff to pursue a state-law claim under Conn.Gen.Stat. § 22a–452 concurrently with its claim under § 113(f)(1) of CERCLA does not conflict with the settlement scheme of CERCLA. The conflict that existed in *Bedford Affiliates* is not present in the instant case.

8. Section 113(f)(2) provides:
   A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement

Accordingly, we hold that plaintiff's state-law claim under Conn.Gen.Stat. § 22a–452 is not preempted by § 113(f)(1) of CERCLA and deny defendants' motion to dismiss count four.

### CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [**Doc. # 14**] is GRANTED as to Count One of Plaintiff's Complaint and DENIED as to Count Four.

SO ORDERED.

shall not be liable for claims for contribution regarding matters addressed in the settlement....